Please be seated. We'll proceed into our next case. I'm ready, Your Honor. Please. Good morning. May it please the Court, my name is Jeffrey Fogle, and I represent the plaintiff's appellants in this case. It's, of course, interesting to me to come here today and see that you had another case about earned sentencing, earned sentencing credits. But I don't think the issue that you had in that case is applicable here. Because nobody has contested the fact that had Mr. Miyares not issued his opinion, had Mr. Clark not revoked what the legislature had done, that the plaintiffs would have been entitled to be released as of the date designated by the legislature, which was July of 2022. As you know, my clients weren't released in 2000 until 2023 because of the habeas decision of the Virginia Supreme Court in the Priest case. You're still in the Attorney General under 1983 and claiming a civil rights violation, that's correct? Yes, sir. I'm sorry, Judge, you were about to ask something? For an opinion letter. Yes. On a legal issue. That's as to Mr. Miyares. But as to Mr. Clark, the only defense raised for Mr. Clark in the district court really was he relied on the advice of counsel. But as we know from the record, there were two different advices on this issue from counsel. The issue here is whether the Attorney General is entitled to qualified immunity. Well, I'm sorry, I didn't quite hear that. Qualified immunity. Well, that's the other issue, yes. From the plaintiff's perspective, the key issues in this case are whether or not we have at least pled a plausible case of deliberate indifference. Couldn't you have pursued a remedy in state court? Because we're talking about a state official whom you allege has violated state law. Is there a remedy for you, and would there be a remedy for you under state law? I don't know the answer to that, Judge. We looked at the law and basically decided that the violation of a vested liberty interest raised constitutional implications under the Eighth and Fourteenth Amendments. This is my problem, Mr. Fogel, and it's a problem of federalism, really. And I think it would be a very aggressive ruling to hold that a federal court could hold a state official liable for damages because of a dispute over the interpretation of state law. I mean, people disagree over the interpretation of laws all the time. We have disagreements among our court. We have disagreements among the attorney general from one attorney general to the next and everything. But the fact that one has a disagreement over a matter of law doesn't mean that you get to sue that individual for damages over a question of legal interpretation, and particularly a federal court holding a state official liable for damages over a disputed question of state law. That really seems to me to present a problem of reaching into the state's administration of its laws. And I can't imagine the number of suits that that would unleash here. Well, Your Honor, it's not merely a matter of a disagreement of law. And I'd like to review how the district court looked at that opinion and answer why it is we believe the district court was wrong and why it is that that opinion went beyond mere negligence. Well, you're fighting over two legal opinions by two attorneys general that opposed one another. Lawyers disagree all the time. And that's not a sort that one side usually loses. And to hold the lawyer liable personally, the 1983 sentence, personal. But we know that's a fiction, Judge, because the lawyer liable personally for a legal opinion that was later determined to be incorrect. Well, again, it's not our position that merely because it was incorrect that that gives rise to a violation of the Eighth or Fourteenth Amendment. We say he was deliberately indifferent. No, but there you went up against the finding of the district court that said that the attorney general looked at the text of the statute. He consulted the canons of construction. He looked at the larger purposes of the statute. And he came to one conclusion. But the district court, far from finding that he was deliberately indifferent, found that he'd gone about the task of legal interpretation in a perfectly conventional kind of way. At the end of the road, you have two people disagreeing. But people disagree within the legal universe every day of the week. That's why we have an adversary proceeding, because disagreements arise. But the losing side of a legal dispute should not likely be held up in damages. And that's particularly true where you're talking about a state's interest in the administration of state laws. And having a federal court hold a state attorney general liable for damages over an interpretation that others may disagree with, that seems to me very adventuresome. I hear what you're saying, Your Honor, but may I react? Sure. And discuss what the district court found? As you said, the first thing the district court found was that Mr. Meharry's, quote, carefully considered the text of the statute itself. Well, from what we stand for, had he done so, we would not be here today. Because the text of the statute was clear, unambiguous, and there was nothing to decide, nothing to interpret. The trial court also found that the defendant properly applied the canon of absurdity. But the Supreme Court went ahead not only and rejected that, but reminded the defendant, Mr. Meharry's, that we have consistently explained that the doctrine only applies when a statute's internally inconsistent or otherwise incapable of operation, which is not the case here. Finally, the district court found that Mr. Meharry's appropriately considered the intent of the legislature, a common practice in statutory interpretation. Well, that's fine. And then, you know, you don't – everything doesn't rephrase back to the Constitution, and you can go at this through state law. But instead, you brought an Eighth Amendment claim, which normally applies to prison conditions. And the habeas is what you normally – the vehicle you normally use for the fact of detention. But you brought an Eighth Amendment claim, which says, is it some sort of infliction of cruel and unusual punishment? This is a prison condition. Eighth Amendment is reserved for prison conditions. And so he said, well, let's go to due process. But that has to be something that shock the conscience. And substantive due process is probably the doctrine least favored by the Supreme Court these days. And so when I'm thinking about why is this being brought up under the Eighth Amendment? Why is this being brought up under substantive due process? Why is this being brought up in federal law by virtue of 1983 rather than through the normal channels of state law and state administration, which is the position Mr. Mezarish holds? It was done, Your Honor, because the case law said that's the way to go. The case law says that over-detention cases – most of the case law said that over-detention cases should be analyzed under the Fourteenth Amendment. But many courts have decided – circuit courts have decided this under the Eighth Amendment. So as a lawyer, I'm sitting there reading the cases coming from all over the country. They say Eighth Amendment. They say Fourteenth Amendment. What's a lawyer to do? I'm not going to go into the specifics of the Fourteenth Amendment of the case.  but rely on the substantive, overwhelming authority that we presented in our brief that this can be considered under the Eighth or the Fourteenth Amendment. Now, frankly, from my client's perspective, we don't care whether it's the Eighth or the Fourteenth Amendment. You know, our claim is, and I refer this Court back to the Wilson case where the Court said where a State official wrongfully detained somebody past their sentence, a viable claim is stated. Now, this Court didn't say under what constitutional provision, but it did say that's a viable claim. And I hear what Your Honor is saying, but I just want to finish. I'm sorry. How do you handle our decision in Campbell v. Florian? It seems to me we had a similar situation there. And you were on the panel. I was on the panel. But the question really goes mostly in this type of case to a state of mind, some kind of mens rea. And here we have an attorney general being asked for his advice, and he writes an opinion letter, and it's not directed at any particular defendant. It's written at a provision that he is construing. There is no Supreme Court of Virginia case. He's construing it the way he thinks is best construed. And we said it's inappropriate to bring a suit under that. I mean, you're seeking some kind of deliberateness, maliciousness, some kind of indifference, deliberate indifference. I'm not sure which standard you'd prefer, the Eighth Amendment or the Fourteenth, but both of them have some kind of mens rea. And here we have an attorney just doing his job, professional job, and you want to sue him for damages. Well, let me finish what I was saying about the district court first, which was the court said that the Mr. Mejia is appropriately considered the intent of the legislature. Again, there was no need for interpretation whatsoever. Moreover, the defendant has misstated the intent of the General Assembly, claiming its purpose was to limit the applicability of enhanced good time credits when its declared purpose, according to the Virginia Supreme Court, was as an incentive for good behavior and rehabilitative activity while incarcerated. Doesn't that underscore the basic point that this is really a matter of state law? And whatever label you put on it, whether it's an Eighth Amendment or Fourteenth Amendment, as both of my colleagues have said, both Judge Niemeyer and Judge King, if we're going to string up a state official for damages, for doing nothing more than interpreting a law and doing his job, and a federal court barges in with that kind of a holding. We know that he was a political opponent of these provisions, and so he had a motive to do what he did as a lawyer. We don't know whether, in fact, Mr. Clark actually asked for reconsideration or whether this was a political position. I mean, Justice Hugo Black was a champion of all sorts of New Deal legislation when he was in the United States Senate. And then when the cases came up before the court, he championed the New Deal legislation and found it constitutional. But nobody has ever said that somebody's experience in public life recuses them from sitting on a case. We'd be off to the races. Fair enough. I didn't get your answer to how you address why aren't we bound by Campbell. I'm sorry? Why aren't we? No, I mean, you are bound by Campbell v. Florian, no doubt about it. But Campbell v. Florian didn't foreclose what we're arguing here today. What Campbell found was that the reaction of the Attorney General in South Carolina was appropriate and reasonable. Our argument is that it was not appropriate in this case and it was not reasonable. In fact, it's interesting to see that the statement of facts by the defendant and the inclusion of the criminal records of my clients that are relevant to nothing in this case. I can only assume they put it there because of the argument somehow bad guys shouldn't receive the benefit of the law. But, Judge Nehmeyer, I raise the point of where is the men's ray here? Where is the intentionality here? Deliberate indifference and shock of conscience and whatever, the Eighth Amendment, infliction of harm, they all require some significant element of intentionality. And this person is doing nothing more than interpreting a statute in a general way. He doesn't have it in for this person. He's interpreting a statute. He's interpreting a law. That's what Attorney Generals do. That's their job. That's our job to interpret law, too. And, I mean, I just don't... One final point, if I may. I see where the Court's going, but I want to make one final point. Well, no, tell me what your final point is. You're an able advocate, and I want to hear your final point. It won't be your final point because you have some time for rebuttal. I'd make a point that you're arguing that this Attorney General was stretching the law and your arguments could be turned around against you in this lawsuit you're trying to stretch the law. My final point was simply that even after the decision of the Virginia Supreme Court in Preece, which clearly laid out the law, Mr. Miyares persisted with respect to conspiracies to commit murder rather than attempted murder, and he did so in the Vasquez v. Dodson case. So he was told by the Supreme Court of Virginia exactly what needed to be done, and he rejected even the Supreme Court's opinion. That was not reasonable. Our position is his position in the opinion and in his defense of that opinion was unreasonable, inappropriate to the serious risk here of spending an extra year in prison after the legislature had told you you are entitled to release. Thank you. We thank you. And you've got some time for rebuttal. All right, Mr. Gallagher, let's hear from you, sir. Good morning, and may it please the Court. I'm Kevin Gallagher, Solicitor General of Virginia, representing Attorney General Miyares and Director Clark. With me today is Graham Bryant, Principal Deputy Solicitor General. In Campbell v. Florian, as you pointed out, Judge Niemeyer, this Court held that legal error alone is not deliberate indifference. As this Court explained, in our legal system approximately 50% of litigants lose and thus have pressed what a court has determined to be an incorrect legal opinion. Courts around the country, including this Court, can be overturned. And even at the Supreme Court, up to four justices can sometimes share an incorrect legal opinion. Making legal error equivalent to deliberate indifference would transform routine legal disputes over the proper interpretation of State statutes into Federal constitutional matters and accompanying damage claims. Let me ask you this. I think the appellant is suggesting that we're entitled to review the legal opinions of Attorneys General based on the substance of the opinion as opposed to the exercise of the Attorney General's job to issue opinions and publish them for use by the executive branch. And I don't know if we addressed that in Campbell. The question I have is whether we should get in the business of second-guessing opinions substantively as opposed to looking at the circumstances about them. I mean, it seems to me there should be a strong presumption that when Attorney General issues an opinion within the course of his duties that this doesn't give rise to a damage action. It will probably not surprise you that I think that there should be a high bar here. I think the analysis that this Court used in Campbell v. Florian is certainly relevant. There, this Court looked at the reasonableness of the act of that official, looked at how he came about doing that opinion, whether he looked at the legal text, canons of construction, legislative purpose, things of that nature, and determined that that process is how a careful attorney would have handled that exact issue. Didn't look at necessarily the substance of the opinion, although I will say the lower court in that case, the state court, had found that that legal opinion that was on review for this Court in Campbell v. Florian was unreasonable, found that it was patently erroneous, said that the lawyer there … Which legal opinion are you talking about was wrong? In the South Carolina decision that this Court was reviewing. We're talking about Campbell v. Florian. In Campbell v. Florian. You're not talking about this case. I am not talking about this case. Actually, the exact opposite. Right. In this case, there was no finding of unreasonableness. There was no finding that there was a patently erroneous view of the statute. The Supreme Court of Virginia certainly disagreed with the Attorney General's opinion, but that happens every day in this Court. That happens every day in the Supreme Court of Virginia. And two of the two were two attorneys general. One took one position and one took the other. But that's the way things work. That's exactly right. And I would love to go through those two opinions because I think it's very relevant here. Attorney General Herring … I'm not asking you to go through them. I just know that's – those are the facts of this case, though. Those are the facts of this case. And both attorneys general, both Herring, Attorney General Herring and Attorney General Meares, were dealing with a new statute the Supreme Court of Virginia had not reviewed. And there's got to be a strong presumption that both of them were acting in good faith. They were calling it as they saw fit. That's exactly right. I mean, that's where we have to start, I think. I don't know how much authority you've got for that, but that's my thinking about it. I do think that this Court in Campbell v. Florian looked at the good faith interpretation that the lawyer put forward. And so I would invite the Court to do that here. Both Attorney General Herring and Attorney General Meares were looking at this new statute. They just drew the line in different places. Both of them looked at the provisions of the statute and saw that there are certain carve-outs from the enhanced earning sentence credits for – definitely for completed acts of, for instance, a Class I felony. But that still left open the question about whether accessory offenses or inchoate offenses were included in that. Attorney General Herring decided that accessory offenses were included within the completed act. So the completed act itself, principle in the second degree, and accessory before the fact would all be not entitled to the enhanced sentence credits. I mean, one of the most litigated areas of law deal with inchoate crimes. Attempted this, attempted that. But the whole area about from which the dispute arose, which was an inchoate crime, is regularly the subject of dispute within this Court. I mean, there are few areas more litigated in criminal law than the place of inchoate offenses. And that's what you have here. That's exactly correct, Judge Wilkinson. And that's exactly why both Attorney General Herring and Attorney General Meares decided to look at this new statute and see how inchoate offenses came into play. What – is there – do you understand? I probably ought to be asking your colleague, but is there any law that the Attorney General violated here, deliberately violated? I mean, any constitutional decision that supports his position? Not to my knowledge, Your Honor. I believe that he would point to – I don't want to put words in his mouth. We also have this whole doctrine of immunity where public officials who are carrying out their functions of being sued and their personal damages for violating the Eighth Amendment, that you'd have to come forward with some law that said that they violated clearly established law in rendering that opinion? That's exactly correct. We are here on a qualified immunity decision. And so there are two prongs to that, as you all know. And this Court is welcome to rule on either whether there was a violation or whether the right was clearly established. I've been making arguments this entire time about whether there was a violation. We take a very strong stance there was not a violation of the Eighth Amendment or the Fourteenth Amendment here. But at the very least, on the clearly established prong, Florian v. Campbell would clearly establish the opposite proposition, which is to say that if someone were, in fact, doing what a careful attorney would do in this exact situation, they were not deliberately indifferent. And as far as substantive due process, I don't believe – and you can ask my friend on the other side – but I don't believe they have put forward any cases that would clearly establish anything. The Supreme Court may even regret its substantive due process doctrine, but they have very much narrowed it. I don't disagree with you, Your Honor. I just know that at least in this particular case, there's no evidence of a violation of the Eighth Amendment or a violation of the Fourteenth Amendment. Excuse me. Is the interpretation that Campbell controls this case? That is exactly correct, Your Honor. Campbell v. Florian is, if not on all fours, it's three of the four. It is a different, obviously, factual situation in that it's a different attorney at issue. You know, if anything, it's harsher because the district court did make a finding, and yet we said that still doesn't incur liability, made a finding of unreasonableness, but that we concluded that still didn't create liability. And, of course, here the district court said just the opposite. That's exactly right. And I just want to make one final point, although I'm happy to answer the Court's questions. Deliberate indifference is an incredibly high mens rea. There were some questions from my friend on the other side about that. Do you think this case is under the Eighth or the Fourteenth? We made the argument in our brief, and I'm happy to make it here, that it should be an Eighth. It should be a Fourteenth Amendment claim. This Court in Campbell v. Florian looked at those Eighth Amendment and Fourteenth Amendment claims and said that when it's the fact of detention as opposed to the conditions of detention, courts have more typically looked at that as a Fourteenth Amendment claim, not an Eighth Amendment claim. For the purposes of today, both of those would require at least deliberate indifference as the mens rea. So we really just don't think at the end of the day it's an Eighth. The lawyer is entitled to frame it the way he wants to. On the other side, I mean, that's what lawyers do, too. I mean, we're arguing about that. I mean, it's a reach any way you look at it. In this situation, it's a release, it's a reach. But lawyers are entitled to do that. That's correct. At this point, I'm going to ask my colleagues here if they have any questions of you. Judge Niemeyer, do you have anything? We have no further questions. And we thank you for your argument. Thank you, Your Honor. All right. Mr. Fogle. I have two brief points. Number one, I think it's been universally accepted that the standard of culpability under deliberate indifference is more than mere negligence, but less than an intention to do harm. And that's what we're asserting here. Very much like a legal malpractice case in a sense. What is your best case to show that the Eighth Amendment was violated here? I don't have it at hand. It's all in the briefs, Judge. I'm sorry. You don't know the case, your best case? Sample v. Deeks from the Third Circuit. What's that hold? That the Eighth Amendment is the appropriate. No, no. I'm not talking about that. That an attorney general who gives his opinion violates the Constitution when it turns out to be wrong. I did not find such a case. I draw my inference. Isn't that automatically entitled the attorney general to qualified immunity? No, because the rule isn't as to which official may violate your rights. It's that if an official violates your rights. And it shouldn't matter whether it's the attorney general or the guard outside your cell. The under qualified immunity, the official has to violate clearly established law that any reasonable person in his position would know that it violated it. Now, what is, what law did he violate by rendering that opinion? Well, I think it's. That he knew he was violating or should have known he was violating as a reasonable person. I think, Your Honor, the Campbell case lays out what would constitute an Eighth Amendment violation. It's very clear there. So we even have, although they didn't actually, the court didn't actually decide, they went through the whole analysis under the Eighth Amendment and found that he wasn't deliberately indifferent. So based on that, if we believe that he wasn't deliberate. So what is your case to go the other way? You have this attorney general, you accuse the attorney general of violating the Eighth Amendment because he issued an opinion that was reversed by the Supreme Court of Virginia. I want to know what, where is the case law that you rely on to say that was unconstitutional? I don't have anything involving an attorney general making an argument, however bad, however frivolous, however much it might be malpractice. I have no such case. How about any government official rendering an opinion? Well, let me just. Do you have an opinion? Do you have a case? I don't have it at hand. Well, now, how are you going to impute to this, to this attorney general, how are you going to impute to him a violation of law that you don't even have a case to support? The law is clearly established that any State official who inappropriately extends the sentence of an individual who is entitled to be released violates. Some courts say the Fourteenth Amendment. Some say the Eighth. Some say both. Don't you think that's pretty broad? Anybody who extends, sure, you lock him up and you hold him and he's supposed to be released. But that isn't what we have here. We have an attorney general interpreting a statute that was later reversed by a court.  I get your point, Your Honor. Yeah. One final point. And you substituted inappropriately for deliberately. Well, some of the cases talk about inappropriateness as a standard. But the standard is deliberate indifference. One final point, which I think is important, because we have not really addressed what saves Mr. Clark from liability here. After all, he had to. Let me ask you something. If Mr. Clark decided to go the other way, say the attorney general had gone one way and Clark went the other way, he's allowed to disobey the opinion of the attorney general in the administration? Yes. It's an advisory opinion. Pardon me? It's an advisory opinion.  It's not binding on any State agency. Of course it isn't. But the question is, you're now in charge of the – you're the warden and you're trying to apply the law under a statute that's not been construed, and the attorney general gives an opinion, and you're saying the warden violates the law by following that? He had two opposite opinions. It's almost as if he had no opinion at all. He could look at the statute. The statute was clear. The statute was unambiguous. But all he did was request an opinion from the AG, and the head of State agencies requests opinions from the attorney general all the time. Yes. They can't wait and go through court and everything. They need to make a decision on a more accelerated schedule. And what they do is when there's no opinion, they ask the AG. And the AG is simply the source of a great deal of guidance throughout State government. And if we hold a State official liable for requesting an AG opinion – I'm not asking for the request. It's the implementation of that opinion, which was a choice that he certainly made. What is he supposed to do when he gets an opinion from the AG? He's supposed to follow it, isn't he? But if he didn't follow attorney general's hearings, he had a choice at that juncture, like any client who got two opposing opinions from two different lawyers. And if you got two different opinions from two different lawyers, it is the client that decides which opinion they want to follow. So maybe that's true. But if he had a choice and he finds one legal view more persuasive than the other, we're right back into the difficulty of holding State officials, both elected and appointed, liable for simply making good-faith efforts to try to resolve a difficult question of law. And this occurs every day in State government, that people make a request from the attorney general as to what State law is required. And if he had a choice, fine. That simply points to a dispute. And that's pretty much what qualified immunity is all about, that these public officials need to do their work and go on. Call them as they see them. Well, we know the law was clear and unambiguous that any of us, and non-lawyers as well, could have read it and seen the truth. But I hear what the Court is saying, and I don't wish to, what is the term, appraise a beat-a-dead horse, as it were. Well, I hope you'll let us say as well that we appreciate the vigor of your argument. It's a real pleasure to have you here, and we'll come down and shake hands with all of you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King